IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Lacey Leroy McClam Jr., | Crim. No. 4:07-cr-01277-TLW-1 |
| v. | **ORDER** |
| United States of America, | |

This matter comes before the Court on Lacey Leroy McClam, Jr.'s, *pro se* motion for a sentence reduction under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 283. For the reasons below, McClam's motion is **DENIED**.

BACKGROUND

In the summer of 2005, McClam and his codefendants committed a spree of eight violent armed robberies in Florence, South Carolina, during which four people were shot. In 2007, he was indicted on ten counts related to five of these robberies. ECF No. 1. After a jury trial, he was convicted of two counts related to one of the robberies and acquitted on counts related to the other four robberies.[1] ECF No. 96. At sentencing, considering applicable sentencing guidelines and relevant caselaw, the Court found that McClam's involvement in the four acquitted robberies—along with his involvement in three uncharged robberies—was readily provable by a preponderance of the evidence and appropriate for consideration in imposing a sentence in his case. *See* ECF No. 135. Accounting for this conduct, the Court

---

[1] McClam was convicted of Count 5 of the Indictment, armed robbery in violation of 18 U.S.C. § 1951(a), and Count 6 of the Indictment, possession of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A).

Page 1 of 20

upward departed and sentenced McClam to 276 months of imprisonment. ECF No. 125. McClam then appealed to the United States Court of Appeals for the Fourth Circuit. ECF No. 128.

On appeal, the Fourth Circuit affirmed both McClam's convictions and the Court's consideration of uncharged and acquitted conduct at sentencing. *Id.* The Fourth Circuit then vacated the sentence on a technical issue and remanded the case to the Court for resentencing. ECF No. 141. The Fourth Circuit concluded that the Court should have established a different starting point for the departure or variance in light of a § 924(c) statutory sentence and a guideline robbery sentence. *Id.*; *United States v. McClam*, 417 Fed. Appx. 281, 282 (4th Cir. 2011) (unpublished). On remand, the Court sentenced McClam to 192 months for the armed robbery conviction and 84 months for the 924(c) conviction, for a total sentence of 276 months—the same sentence that was imposed at McClam's initial sentencing. ECF No. 161. At the resentencing, the Court again explained its upward departure by citing McClam's involvement in the four acquitted robberies and three uncharged robberies, which it found to be established by a preponderance of the evidence. ECF No. 169. This sentence of 276 months, imposed a second time, was affirmed on appeal by the Fourth Circuit. ECF No. 184.

McClam next petitioned for habeas corpus pursuant to 28 U.S.C. § 2255. ECF No. 186. The Court denied the petition via written order. ECF No. 211. McClam appealed this order, and his appeal was dismissed by the Fourth Circuit, which concluded that no certificate of appealability should issue. ECF No. 221. McClam

next filed a second § 2255 petition, which was dismissed by the Court as improperly successive. ECF Nos. 229 & 231. McClam then sought permission to file a third, successive petition with the Fourth Circuit because of *Johnson v. United States*, 136 S. Ct. 1257 (2016), which the Fourth Circuit granted. ECF No. 254. McClam filed his third § 2255 petition collaterally attacking his sentence on this basis. ECF No. 255. The District Court denied relief on this petition and declined to issue a certificate of appealability. ECF No. 264. McClam appealed, and the Fourth Circuit dismissed his appeal, choosing not to issue a certificate of appealability. ECF Nos. 266 & 275.

McClam next filed this motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 283. He has also moved for the appointment of counsel, ECF No. 284, and has filed additional documents in support of his motion, ECF Nos. 285 & 286. The Government has filed its opposition, ECF No. 289, to which McClam has replied. ECF No. 291. [2]

This matter is now ripe for review, adjudication, and disposition.

## APPLICABLE LAW

Absent certain exceptions, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of those exceptions is the compassionate release statute. That statute provides:

> [T]he court, . . . upon motion of the defendant . . . , may reduce the term of imprisonment . . . after considering the factors set forth in

---

[2] McClam filed a motion for an extension of time to reply to the Government's response. ECF No. 290. Given that McClam has now filed his reply, which the Court has considered, the Court denies his motion for an extension of time as **MOOT**.

> section 3553(a) . . . , if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). "A defendant who seeks compassionate release under § 3582(c)(1)(A)(i) has the burden of establishing that such relief is warranted." *United States v. Edwards*, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020).

The Sentencing Commission has issued a policy statement addressing compassionate release motions—§ 1B1.13. But before the passage of the First Step Act, compassionate release motions could be filed only by the BOP, so § 1B1.13 by its terms only applies to BOP motions. *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020) (explaining the First Step Act's changes to the compassionate release statute). There is no corresponding policy statement addressing compassionate release motions filed by inmates. Thus, in *McCoy*, the Fourth Circuit held that, when considering an inmate's compassionate release motion, § 1B1.13 is not an "applicable policy statement[]." *Id.* at 284. But while § 1B1.13 may not directly apply to an inmate's motion, "it remains helpful guidance." *Id.* at 282 n. 7.

While § 1B1.13 may provide guidance, it is not an "applicable policy statement[]," so "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d. Cir. 2020)) (emphasis in original); *see also United States v. Kibble*, 2021 WL 1216543 (4th Cir. 2021). Ultimately, the determination of whether a case presents extraordinary and

Page 4 of 20

compelling reasons warranting a sentence reduction is a question reserved to the sound discretion of the district court.

## DISCUSSION

### I. THE PARTIES' ARGUMENTS

Before addressing the merits of McClam's motion, the Court will first review the arguments put forth by both McClam and the Government.

#### A. *McClam's Arguments in Support of His Motion*

McClam's motion and reply sets forth three grounds for compassionate release. ECF No. 75 at 1. They are (1) his belief that "his 924(c) conviction in which he is convicted of is no longer applicable" because it is a "stacked" sentence, (2) his assertion that he "was given an enhanced sentence based on acquitted conduct," and (3) his rehabilitation. ECF Nos. 282 at 1–6 & 291 at 2–5.

#### B. *The Government's Opposition*

The Government asserts that McClam's motion should be denied "because the circumstances presented fail to meet the heightened ['extraordinary and compelling reasons'] standard required by § 3582(c)(1)(A)(i) [.]" ECF No. 289 at 5. In support of this, the Government notes that McClam "does not have multiple ['stacked'] 924(c) sentences—he has a single 924(c) sentence that runs consecutive to a Hobbs Act Robbery sentence." *Id.* at 1. Despite McClam's alleged rehabilitation, the Government maintains that his 276-month sentence is necessary because, when considering the 18 U.S.C. § 3553(a) sentencing factors, his "violent acts weigh against a reduction in his sentence." *Id.* at 6.

## II. THE COURT'S REVIEW

The Court will first take up McClam's request for the appointment of counsel before moving on to its analysis of whether he has presented "extraordinary and compelling reasons" warranting a reduction in his sentence along with whether the § 3553(a) factors favor his release.

### A. *Appointment of Counsel*

McClam requests that the Court appoint him counsel in connection with this post-conviction § 3582 proceeding to help him "prepare an adequate response to the Government's response [.]" ECF No. 284 at 1. "A criminal defendant has no right to counsel beyond his first appeal." *Coleman v. Thompson,* 501 U.S. 722, 756 (1991); *United States v. Coleman*, No. CR 3:01-506-JFA, 2020 WL 8258249, at *1 (D.S.C. July 30, 2020) ("As an initial matter, there is no general constitutional right to appointed counsel in post-conviction proceedings."). Although due process mandates the appointment for certain post-conviction proceedings, a motion to reduce a sentence pursuant to § 3582(c) does not fit into this category. *United States v. Legree,* 205 F.3d 724, 730 (4th Cir. 2000). The Court has discretion to appoint counsel in proceedings under § 3582(c) if the interests of justice so require. *Id.*

In review of McClam's motion, the Court finds that he is capable—and has proven capable—of requesting compassionate release and replying to the Government's response in opposition without the assistance of counsel. He has not otherwise established that the interests of justice require the appointment of counsel in this case. Accordingly, the Court denies McClam's motion requesting the

appointment of counsel.

### B.  *The "Extraordinary and Compelling Reasons" Standard*

As noted above, McClam has set forth three grounds, which he believes are "extraordinary and compelling reasons" warranting a sentence reduction. They are: (1) his allegedly "stacked" § 924(c) sentences, (2) his enhanced sentence based on acquitted conduct, and (3) his rehabilitation. Accordingly, the Court will review each of these arguments in turn, before proceeding to an analysis of the relevant § 3553(a) factors.

#### i.  *McClam does not have stacked § 924(c) sentences.*

McClam asserts that his motion is based "on the 'First Step Act' newly revised Provision of Section 402 concerning the "Stacking of the 924(c)." ECF No. 283 at 5. This argument has no merit. McClam is not serving "stacked" sentences. McClam states that he "was given 84 months whereas it is Mr. McClam['s] first 924(c) conviction, the 'First Step Act' invalidated that and numerous courts have agreed that 18 U.S.C § 3582(c)(1)A)(i) provides defendants with relief." *Id.* Although McClam appears to abandon this argument in his reply, the Court will still address it on the merits.[3]

The First Step Act was passed in December 2018, after McClam was sentenced.[4] Before the First Step Act, federal prosecutors could "stack" multiple violations of § 924(c) for sentencing because a first and "second or subsequent"

---

[3] In his reply, McClam notes states that the Government's response misconstrues his motion when it argues "that he is requesting the Court reduced [sic] his sentence because of 'stacked' violation. However, Mr. McClam made no such request or arguments in his motion." ECF No. 291 at 1.
[4] *See* First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5222.

offense could be charged at the same time. As the relevant statute provided, a defendant who robbed two commercial businesses while brandishing a firearm could be charged with two violations of § 924(c) and, if convicted at trial face a 7-year mandatory minimum as to the first violation and a 25-year mandatory minimum as to the second violation, said sentences to run consecutively. In 2018, Congress modified § 924(c) to provide that the 25-year mandatory minimum penalty now applies to a second or subsequent § 924(c) conviction only if the prior § 924(c) conviction already "has become final." Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5222. As McClam notes in his motion, since the passage of the First Step Act, defendants have moved for compassionate release based on the disparity between "stacked" 924(c) sentences imposed before the First Step Act and the sentences they would receive today based on the same offense conduct. The Fourth Circuit has since held that district courts can consider the First Step Act's § 924(c) change when evaluating a defendant's motion pursuant to the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i). *United States v. McCoy*, 981 F.3d 271, 285–86 (4th Cir. 2020).

That said, the First Step Act's changes to § 924(c) are inapplicable to the sentence imposed in McClam's case. This is because McClam did not receive a "stacked" § 924(c) sentence since he received only *one* § 924(c) sentence for count 6. The Court noted this in its order denying McClam's first § 2255 petition. ECF No. 211 at 15 ("Petitioner is incorrect that multiple gun enhancements were applied to his sentence."). Accordingly, because McClam's sentence did not result from

"stacked" § 924(c) mandatory minimums, the Court finds that he has not established "extraordinary and compelling reasons" warranting a reduction on this basis.

> ii. <u>The Court's consideration of uncharged and acquitted conduct—proven by the preponderance of the evidence at sentencing—does not provide an "extraordinary and compelling reason" warranting a reduction in McClam's sentence.</u>

McClam next asserts that he is entitled to a sentence reduction because "it was improper to enhance his sentence based on acquitted conduct [.]" ECF No. 291 at 1. In support of this argument, he references proposed legislation and proposed amendments to the Sentencing Guidelines. ECF no. 291 at 2–5. The Court has reviewed this argument, the record, and the relevant caselaw and finds that McClam has not established "extraordinary and compelling" reasons warranting a reduction in his sentence.

First, the Court notes that the Fourth Circuit found that Court's upward departure based on acquitted conduct was proper in its opinion on McClam's direct appeal:

> The district court found, by a preponderance of the evidence, that an upward departure was warranted because McClam had participated in numerous other robberies and shot [at least] two people during the course of those robberies. We conclude that the evidence *amply* supported the district court's finding . . . Thus, the district court's reliance on uncharged and acquitted conduct to support its decision to depart was reasonable.

ECF No. 141 at 9 (emphasis added). Indeed, the enhancement of McClam's sentence based on uncharged and acquitted conduct was the very crux of his appeal to the Fourth Circuit. *See* ECF No. 211 ("[A]s is reflected by the Fourth Circuit opinion,

the upward departure based on acquitted and uncharged conduct was the gravamen of Petitioner's appeal"). Because the Fourth Circuit concluded that it was proper to enhance McClam's sentence based on uncharged or acquitted conduct, there is no basis to conclude that this determination is a ground for establishing "extraordinary and compelling reasons" warranting a reduction in McClam's sentence. It was simply a legal analysis provided by the guidelines and case law, the use of which in McClam's case the Fourth Circuit affirmed.

Even in light of this conclusion, the Court will review this issue again in detail here. However, its previous analysis and conclusion remains unchanged. The Supreme Court held in *United States v. Watts* that "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." 519 U.S. 148, 157 (1997); *see also United States v. Jones*, 31 F.3d 1304, 1316 (4th Cir. 1994) ("The defendant need not be convicted of the charges constituting relevant conduct for him still to be held accountable for them."). The Court found both at McClam's original sentencing and resentencing that his involvement in the uncharged and acquitted conduct had been proven by a preponderance of the evidence. The Court will again review this conduct, which consisted of *seven* violent armed robberies. In doing so, the Court again finds that McClam's involvement in this conduct is established by the preponderance of the evidence.

First, the Court will review the uncharged conduct. As detailed in the Presentence Investigation Report ("PSR") and by the Court in both sentencing hearings, the acquitted conduct was extraordinarily violent and involved three armed robberies which took place over two days in June 2005. PSR ¶¶ 16–18. The first robbery occurred in the early morning hours of June 12, 2005, when McClam and his codefendant concealed their faces and entered the Murphy's Lounge night club in Florence, South Carolina. *Id.* The two robbers approached three victims, presented a firearm, and demanded money. *Id.* They stole money from one victim and a pocketbook from another. *Id.* The third individual refused to hand over his wallet, and McClam and his codefendant exited the club and fled the scene. *Id.*

The next robbery occurred several hours later. McClam and his codefendant robbed the Kwik Fill gas station in Florence, South Carolina, with their faces covered in black masks. *Id.* ¶ 17. Before entering the store, both suspects approached a customer outside, placed a gun against his head, and ordered him into the store. *Id.* Once inside, the two approached the store clerk, pointed a gun at her, and told her to "give it up." *Id.* The clerk informed the two robbers that the store's safe only opened after a two-minute waiting period. *Id.* When the two informed her they would wait, she advised them that the police were on the way. *Id.* The two then fled with around $45.00 in cash and one carton of cigarettes. *Id.*

The third uncharged robbery occurred in the early morning hours of June 13, 2005, when McClam robbed the Pilot Travel Center in Florence, South Carolina. *Id.* ¶ 18. This time, McClam entered the store alone with his face covered. *Id.* He went

directly behind the counter with a gun in his hand. *Id.* He demanded the store clerk empty the register, which she did, and McClam removed around $2,000.00 in cash from the drawer. *Id.* He then instructed the store clerk to turn around so that he could shoot her. *Id.* The clerk begged for her life, and McClam fled to a waiting getaway car. *Id.*

Next, the Court will review the acquitted conduct, which involved four violent armed robberies that took place in June and July of 2005. *Id.* ¶¶ 33–44. The first aquitted robbery occurred in the early morning of June 16, 2005, when McClam and his codefendants robbed the Williams Travel Center in Florence, South Carolina *Id.* ¶33. McClam and his codefendant entered the Travel Center with their faces covered with white t-shirts and armed with handguns. *Id.* McClam instructed the clerk to empty the register. *Id.* Meanwhile, his codefendant accosted a customer, grabbed him by the neck, pushed him into the counter, pointed his firearm at him, demanded his wallet, and fired a shot into the ceiling. *Id.* The store clerk could not open the store's safe and stated that one of the masked robbers said to the other: "Just go ahead and shoot her because she was lying, and she was going to call the police." *Id.* McClam and his codefendant then fled in a waiting getaway car with around $250.00 in cash. *Id.*

Less than half an hour after the first acquitted armed robbery, McClam and his codefendants committed the second acquitted robbery of the Express Shop in Florence, South Carolina. *Id.* ¶ 34. The robbers' faces were again covered, and they were armed. *Id.* Upon entering the store, McClam's codefendant pointed his firearm

at the store clerk, pushed her behind the counter, and demanded money. *Id.* After she emptied the register, the codefendant demanded she open the safe. *Id.* The clerk advised him that she could only retrieve money drops from the safe in two-minute increments. *Id.* The codefendant waited for two money drops while McClam stole lottery tickets and cigarettes. *Id.* According to testimony, McClam repeatedly stated that they needed to shoot the clerk because she was a witness. *Id.* After securing around $250.00 the pair fled the scene in their waiting getaway car. *Id.*

The third acquitted armed robbery occurred several weeks later on July 4, 2005. *Id.* ¶ 36. Around midnight, McClam and his codefendant robbed the Petro Truck Stop in Florence, South Carolina. *Id.* They entered the store with bandanas covering their faces, and McClam stood in front of the register with a 9mm handgun demanding the clerk empty the register. *Id.* At the same time, his codefendant approached a second clerk, put a gun to her head, and sat her on the counter. *Id.* McClam told the first clerk to open the safe and, upon being told he could not, instructed the clerk to climb over the counter. *Id.* When the clerk told McClam he could not climb over the counter, McClam shot him. *Id.* He was wounded in his right shoulder. *Id.* As this was happening, a customer walked into the store, and McClam's codefendant placed a gun against his head, took his wallet, and forced him and the second clerk to lie down in the store's cooler. *Id.* According to the witnesses, the robbers closed the door at which point one of them told the other several times to "shoot him." *Id.* The door then opened, one round was fired at the floor, ricocheted, and stuck to the customer's pants leg—burning him. *Id.* The

robbers then fled with $3,400.00 in cash and two cartons of cigarettes. *Id.* On their way out, they ran towards an approaching customer who turned to run. *Id.* The robbers fired, shooting the fleeing customer in the foot, before entering their getaway car and fleeing. *Id.*

The next day, July 5, 2005, McClam and his codefendant committed the fourth aquitted armed robbery *Id.* ¶ 40. This time the pair robbed the Pilot Travel Center located in Florence, South Carolina, which had previously been the site of the June 13, 2005 uncharged robbery. *Id.* The two entered the store with their faces covered and ordered the employees and customers to get on the ground. *Id.* McClam's codefendant approached the register clerk, pointed his firearm at her, and ordered her to empty the register. *Id.* At the same time, McClam shot a customer in the back with what appeared to be a small Uzi machine pistol.[5] *Id.* The customer was returning from church with his daughter and the two stopped at the store for food. ECF No. 108 at 60:13–20. After taking the money from the register, McClam's codefendant moved towards two individuals near the store's drink

---

[5] The Court finds it necessary to briefly discuss how McClam came to possess this Uzi. Originally, the Uzi was in the possession of two high school students. ECF No. 107 at 94:5–7. McClam's girlfriend's cousin was a classmate of these two highschoolers. *Id.* at 55:1–7. Through his girlfriend's cousin, McClam agreed to purchase the Uzi in exchange for one pound of marijuana. *Id.* at 131:1–132:6. The two highschoolers arrived at the apartment where McClam was staying on mopeds. *Id.* at 97:8–10. When they got there, they were instructed to bring their mopeds inside the apartment. *Id.* at 97:13–25. One of the high schoolers took the Uzi out of his moped, opened the case it was in, and allowed McClam to inspect it. *Id.* at 97:23–98:17. McClam picked up the Uzi and struck the highschooler in the neck with it. *Id.* at 132:12–16. After striking the first highschooler, McClam pulled a pistol out, put it in the first highschooler's face, and told him to sit down. *Id.* at 132:19–25. He then repositioned the pistol in the first highschooler's mouth and threatened to kill him and the second highschooler. *Id.* at 133:1–2. McClam then stole one of the highschoolers' mopeds and left for five to ten minutes to get some beer. *Id.* at 75:21–23; 99:17–21. When he returned, he took the first highschooler's identification card and threatened that, if he called the police, McClam would come after him because he now had the first highschooler's address and knew where he lived. *Id.* at 75:25–13. Only then did he allow the highschoolers to leave. *Id.* at 75:17–18.

machines. PSR ¶ 41. He placed his gun to the first's head and ordered him to empty the safe. *Id.* Once he found out that this individual was not a store employee, he moved to the second and commanded her to empty the safe, which she did. *Id.* Meanwhile, the customer who McClam shot in the back got up and struggled towards the store's gas desk to make sure that his daughter was able to get out of the store. ECF No. 108 at 61:1–18. Seeing that his daughter had safely escaped, the wounded customer fell against the gas desk. *Id.* McClam then approached the customer, placed his gun against the customer's head, and instructed him to stay down. *Id.* at 20–23. McClam and his codefendant then fled. PSR ¶ 41. After they left, the wounded customer stood up, staggered towards the front door, and collapsed against a display rack. *Id.* ¶ 42. When the police arrived, they discovered he had been shot twice in his back. *Id.* Fortunately, he survived. *Id.*

At the initial sentencing hearing, the Court reviewed in great detail the evidence connecting McClam to these seven-armed robberies. ECF No. 135 at 85:20–90:20, 127:10–128:22. In doing so, the Court explained its decision to upward depart and vary in this case because it found that McClam was involved in the robberies by a preponderance of the evidence. *Id.* At McClam's resentencing hearing, the Court again found that McClam's involvement was established by a preponderance of the evidence. ECF No. 169 at 30:24–44:13. Further, in both sentencing hearings, the Court found that McClam was personally responsible for shooting at least two individuals. Having reviewed the record a third time, the Court finds, by a preponderance of the evidence, that McClam was involved in these

seven robberies. Indeed, on direct appeal the Fourth Circuit noted that the evidence reviewed by this court "*amply* supported" this finding, ECF No. 141 at 5 (emphasis added), and the Fourth Circuit has twice affirmed this Court's consideration of this conduct in sentencing McClam. ECF Nos. 141 & 184.

Relevant caselaw and the United States Sentencing Guidelines are clear: a sentencing court is allowed to consider uncharged and acquitted conduct, so long as it is proven by a preponderance of the evidence. The Court has now reviewed the evidence supporting its consideration of the seven uncharged or acquitted robberies involving McClam three times. In doing so, the Court has held each time that McClam's involvement in this conduct is established by the preponderance of the evidence. Accordingly, the Court finds that its consideration of uncharged and acquitted conduct in sentencing is not a basis warranting relief here. It was legally appropriate and hence not an "extraordinary and compelling reason" for relief.

> iii.   <u>McClam's rehabilitation alone does not provide an "extraordinary and compelling reason" warranting a reduction in his sentence.</u>

McClam's third basis for compassionate release is his assertion that "Mr. McClam is a model inmate that has shown an impeccable rehabilitation." ECF No. 283 at 6. While commendable, rehabilitation is not a basis for establishing "extraordinary and compelling reasons" warranting a reduction in McClam's sentence or his release. *See* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). That said, the Court will consider McClam's efforts at rehabilitation when weighing the § 3553(a) sentencing factors.

### C.  *The Court's review of the § 3553(a) factors*

Assuming *arguendo* that McClam could establish "extraordinary and compelling" circumstances, the Court concludes that his motion would still be denied based on an analysis and balancing of the § 3553(a) factors.

In considering a motion for compassionate release, the Court must consider the factors under 18 U.S.C. § 3553(a), as required by 18 U.S.C. § 3582(c)(1)(A). These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct ... [and] to protect the public from further crimes by the defendant"; "the kinds of sentences available"; "any pertinent policy statement[;]" "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

As part of these factors, it is appropriate to highlight McClam's criminal history and the facts of the instant offenses of conviction. McClam's criminal history began in 2005—the year in which he committed the armed robberies at issue. McClam was first convicted of several traffic and alcohol related offenses, which took place in March and April 2005. PSR ¶¶ 49–50. Next, after the robberies at issue, in October of 2005, he committed and was convicted of simple assault and battery. *Id.* ¶ 51. Two months after committing this first assault, McClam

committed another assault in which he shot an individual in the leg, with intent to kill. *Id.* ¶ 52. For this conduct, he was convicted of assault and battery of a high and aggravated nature. *Id.* The Court concludes that this violent conduct weighs against release or a reduction in McClam's sentence.

Before committing the two assaults discussed, McClam committed the instant offense conduct. As outlined in detail above, McClam committed several armed robberies during the summer of 2005. At trial, he was convicted of robbing the Petro Truck Stop in Florence, South Carolina, on June 19, 2005. *Id.* ¶ 15. Like the other robberies discussed, McClam and his codefendant entered the store with their faces covered and with guns in their hands. *Id.* After entering the store, both robbers jumped over the counter and demanded money from the store clerk. *Id.* They then removed all the money from the registers and instructed the clerk to open the safe. *Id.* Upon being told that she could not open the safe, the two robbers jumped back across the counter, where they encountered a customer entering the store. *Id.* The two suspects approached him, one pointed a gun at the customer's chest, and they demanded he empty his pockets. *Id.* The customer turned around as one of the robbers placed his gun against the customer's head. *Id.* The customer told the robbers he did not have any money, and the two robbers fled to their waiting getaway car. *Id.* The Court concludes that this violent conduct similarly weighs against release or reduction in McClam's sentence.

The Court finds that McClam's significant crime spree over the span of two months, along with his continued criminal activity in the months after

demonstrates his disrespect for the law and his propensity to engage in further criminal conduct.

Upon review of the instant offense and McClam's criminal history, the Court concludes that § 3553(a)(2) (the need for the sentence imposed) weighs against release. McClam's sentence was—and is—necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from any more crimes committed by McClam. As for §§ 3553(a)(3)–(4), the Court has considered the kinds of sentences available and the sentencing range established for the offense. As discussed above, the Court concluded at both sentencing and resentencing that McClam's involvement in the seven uncharged and acquitted robberies, which was established by the preponderance of the evidence, warranted an upward departure in this case. That conclusion remains unchanged.

Finally, although the Court's analysis and balancing of the § 3553(a) factors lead the Court to conclude a reduction in McClam's sentence is inappropriate, the Court has reviewed the filings submitted by McClam in support of his claim of rehabilitation. The Court commends McClam for his participation in rehabilitation programs and other opportunities provided by the Bureau of Prisons. Hopefully, these programs will benefit McClam when he re-enters society.

## CONCLUSION

As discussed, McClam's rationale for relief does not meet the "extraordinary and compelling reason" standard required to warrant relief. Even if McClam could

meet this standard, the Court finds that his motion should still be denied based on its analysis and balancing of the 3553(a) factors. His crimes were violent robberies. Individuals were shot by McClam. He is a dangerous individual who would pose a great risk to the public if released. Accordingly, it is the judgment of the Court that McClam's motion for compassionate release, ECF No. 283, is **DENIED**.[6]

**IT IS SO ORDERED.**

*s/ Terry L. Wooten*
Terry L. Wooten
Senior United States District Judge

June 23, 2023
Columbia, South Carolina

---

[6] To the extent that McClam seeks an order directing the BOP to grant him an early release to home confinement pursuant to the CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020), the Court has no discretion to issue such an order. *See, e.g.*, *United States v. Hendrix*, No. 1:10-cr-00067-MR-WCM-2, 2020 WL 2319698, at *1 (W.D.N.C. May 11, 2020) ("The discretion to release a prisoner to home confinement lies solely with the Attorney General. The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this." (citations omitted)).